The case on our docket is Chano Markets v. Powell, No. 20-35621, and that case is submitted on briefs. The next case on the court docket is also submitted on the briefs, and that's Parkbridge Ltd. and Mabel Mack v. Indecent. That's No. 21-5-15534, I think, but that case is also to be argued, which is Chun Yu v. Idaho State University. This case is set for 15 minutes per side, and for the appellant, we have Ronaldo Coulter, and for the appellant, we have Michael Kelly. I think we'll proceed with Mr. Coulter's argument first, and if Mr. Coulter, if you want to make a rebuttal argument, please try to stop before all the time is used up. Yes, Your Honor. May it please the court, my name is Ron Coulter, and I represent the District Court. I would like to reserve two minutes of rebuttal time, if that's possible. Now, as Mr. Yu has alleged, five instances where the District Court acted in error, and our time is very limited, I will first discuss an assignment of error that is significantly impacts this case that's clearly discussed in the amicus brief of the Equal Justice Society. For any of the five assignments of error not addressed in this argument, then we'll just stand on the stand on the brief. Now, Mr. Yu was aware of the Title VI call for the trier of fact to conclude that he was the victim of intentional discrimination. In a two-pronged effort, Mr. Yu presented evidence that showed that through both circumstantial evidence and direct evidence that he was the victim of unlawful discrimination. Now, as part of that circumstantial evidence, Mr. Yu, through the expert testimony of Dr. Leslie Zorwick, established that he was the victim of implicit bias in the form of aversive racism. Let me stop you right here and ask to make sure that we're on the same page with regard to the nature of our review. There was a bench trial here. We have findings of fact and conclusions of law, and I get the sense from where you've started and from your briefs that you're basically trying to get us to decide what the district court declined to decide, but I don't think that's what we're doing here. It needs to be established that findings of fact were clearly erroneous in particular, and so I'd ask you to make sure that that standard is clearly recognized and articulated in your argument. It doesn't really help me to hear that there were experts who testified to this conclusion because that doesn't tell me by itself that the conclusions and findings reached by the district court were so far off the mark the Court of Appeals intervenes. So with that, please proceed. Yes, Your Honor, I do understand that and we're going to write to the heart of it. We looked at five assignments of error, and the first assignment of error was that the court failed to recognize that implicit bias is, in fact, relevant in finding intentional discrimination. Now, we get that from what the court basically stated. After Dr. Zorich testified in part of the findings of fact and conclusions of law, the court stated this, that the court is familiar with theories of prejudice which are racism described by Dr. Zorich, but which carry different names such as unconscious bias or implicit bias. And the court of prejudice states that that theory underlies the testimony of Dr. Zorich and to some extent the testimony of Dr. Chavez, but Dr. Zorich apparently would suggest that even the most egalitarian individuals of whatever race can be unaware of their unconscious bias as a name describes, but still be intentionally racist. That simply makes no sense. Now, my perspective and the perspective of amicus as well, is that when you say something like that, you have basically rejected the idea or actually, not the idea, but the law that's been applied, that aversive racism or implicit bias is not, that's what the court is saying, is not relevant in deciding whether or not intentional discrimination occurred. If I can interject please from it. So, does the court exclude particular testimony that you're challenging? I would say by the courts rejecting the testimony that we're challenging, rejecting the testimony that yes, the court excluded it. When you say that something is nonsensical, even though you went through the Daubert process and brought the expert in and we did that, to say that it is against... I read that statement in there, so I understand that, but again, this is not a summary judgment motion or dismissal on pleadings. The court held a trial and if the court, after holding a trial, admits evidence about implicit bias, but then makes findings of fact rejecting it, why would that be clear? Because the court would be rejecting the holdings of the court, of this court, and the holdings that were done in other circuits as well. Okay, let me ask you a question. Does any, could any person of Chinese derivation make a claim that the program? Not any person. It would have to be someone who meets the criteria that Mr. June Yu has done. He'd have to still go through the McDonnell-Douglas process in regards to stating a prima facie case, and after that would happen, he would still have to show that the reasons given for the adverse educational action were, in fact, pretext by substantive evidence. So, no, not everyone who's evasion is saying they went to Idaho State University in that particular program could, in fact, assert that unless they met the criteria established by law. Our position is that the Ninth Circuit has already established that something that was flatly rejected by the District Court. I think what I look at is that one only needs to look at the plain language, the plain language and the meaning of the language of the District Court statement to quickly ascertain that the court rejected the premise that implicit bias manifested through aversive racism were applicable in determining if ISU's, actions were indicative of intentional discrimination. That is clear. I agree with you that if the passage of the District Court statement that you read, if you just look at that, it does support an inference that that was a misstatement of the law, but that's not the only thing the District Court said. The District Court discussed, I mean, if that was what the District Court thought, the District Court should have said, you know, Dr. Zorwick's testimony is irrelevant. I don't need to consider it. But in fact, in the findings of fact and conclusions of law, the court wrote something like 20 pages of a very detailed analysis of Dr. Zorwick, and finding on various points that he thought her conclusions weren't credible. So, you know, shouldn't we read the District Court's order as a whole and conclude that, you know, it wasn't making a misstatement of the law, but was just making a factual determination? No, Your Honor, I don't believe that that would be the case. The reason that's not the case, because any time a court uses the language that it's not, that the, that her testimony in regards to her expert evaluations was nonsensical, tells me that that tells me and others that it was rejected. It was just flatly rejected. And that's our position. Can I ask you about one aspect of Dr. Zorwick's testimony? She presented five characteristics of aversive racism. And the second one was, and this is on in the 213 or 214 of the ER, the use of race neutral explanations after the fact. So under the McDonnell-Douglas framework, the defendant, you know, after there's a prima facie case, the defendant has to present a race neutral explanation. That's necessarily taking place after the fact because you're in litigation. And if you don't do that, you're admitting liability. So why is it appropriate to allow an expert to present a theory that essentially says that the defendant, you know, defending the case and not admitting liability should be taken as evidence that it, that it's Well, Your Honor, I would agree with you in one respect. But in the other respect, I look at Dr. Zorwick's testimony as it is giving the evidence that shows that the Idaho State University's explanations were, in fact, pretext based on what we call, look at it from a post hoc justification. Now, when you take what the, when you take what the, what the district court did and rejecting the premise of implicit, implicit bias being relevant in regards to intentional discrimination and, and, and the, and then you go from that, looking at the evidence presented, which, which is really interesting because our side was the only side or Mr. Yu was the only one that presented any expertise in this area at all. Then what Dr. Zorwick did was show, not only Dr. Zorwick but others, but Dr. Zorwick showed that the reasons given by the university for doing what they did, okay, was it was in fact pretext and therefore, and she did it substantially because she did it within the framework of aversive racism. And if the district court wasn't persuaded, as he indicated he wasn't, what makes the district court's determination clearly erroneous? Because he rejected the, he, because the district court rejected a holding in a law in the ninth circuit and others that, that intentional, that, excuse me, that aversive racism or implicit, implicit bias is in fact relevant to showing intentional discrimination. Now separate from that, I mean, he did talk at length about, I mean, the, the court's decision discusses at length. Her testimony is, as Judge Miller pointed to, and he plainly wasn't persuaded by it, but the, the lack of persuasion wasn't limited to disagreeing with the premise. And I'm still kind of trying to figure out what automatically makes it, I mean, let me take an example. There's much discussion about Mr. Yu's difficulties with the English language and whether he could be understood, and that itself is held up as demonstration of, of discrimination. So I'm watching a rerun of some PBS masterpiece show the other night with my wife, and we turned the subtitles on because she constantly complained she can't understand English accents. Not because she doesn't like Brits, but because that just doesn't work with her ear. Is that discrimination? Yes, it is. Well, for the, for the PBS show, Your Honor, I say no. Okay. But for Mr. Yu's case, I would say yes. Why? Because if somebody has difficulty understanding him for whatever reason, there's not going to be effective communications, and you'd think for a clinical psychologist, that's a real problem. So how does that demonstrate discrimination as opposed to a fact that these two people simply cannot communicate very well? Well, first of all, Your Honor, Idaho State University knew from the very start that Mr. Yu was going to practice in China. So therefore, communicating in English is just not a serious factor. Well, if they give him a degree, has that degree got an asterisk to it saying only good outside the borders of the United States? It does not, does it? It doesn't say that, Your Honor, but let's look at the reality of the fact. Well, let's look at the reality. He had the opportunity to develop a program, his externship or internship, in China or with Chinese-speaking people, and he opted not to go down that path. He opted to go to Cleveland. And so what is it that makes it the fault of the university that he didn't decide to limit his clinical experience to Chinese-speaking people? How is that discrimination on the part of the university? Well, it's discrimination because the way it normally works, as Dr. Kuchar testified, is that if an individual in an internship has a problem, one of the first things that the university should be doing is to help him construct an internship somewhere else. Now, and for those facts, Mr. Yu was given three particular choices. He chose the Cleveland Clinic, but that was not to say that another choice would not be available to him. And so what happened was when the Cleveland Clinic, I believe, wrongfully terminated him, but it was their option, what happened was he said, look, I'll do it in China, and they said no. And the reason why they said no was because they believed, and I don't know where they get it from, that Mr. Yu would be harmful to the patients in China, when none of them could speak Chinese. As a matter of fact, Dr. Lynch, I don't think he's been west of Mississippi, and making that argument. It doesn't make any sense because Mr. Yu was successful in China. And that's part of the record. So if you're not, if you have three choices, and one wasn't, and you have three choices, you pick one, and one of the things you're supposed to do under the American Psychological Association's guidance is to help the individual construct one. You just don't, if somebody fails or is not successful in an internship, and remember, in this particular case, Mr. Yu had only been there roughly three weeks, three weeks before Dr. Spear said something about him not being qualified or not ready, but we also know that Idaho State University certified him as ready. If they certify somebody as ready in an internship, and they don't do well, and you go by the APA standards, then Mr. Yu should have been allowed, as he requested, to do his internship in China, because that's where he was going to practice. I hope I answered your question, Your Honor. Counsel, if I may interject, you've used up your time, but I'm going to give you two minutes of extra time for rebuttal argument. Thank you, Your Honor. Now we'll hear from Apelli. Thank you, Your Honor. May it please the Court, my name is Mike Kelly. I am counsel for Apelli at Idaho State University. Mr. Yu has raised this challenge to the district court's finding from the bench trial that Idaho State did not intentionally discriminate him on the basis of race. At trial, he had the burden of persuasion, and he did not meet that. It appears, based on the briefing and oral argument on appeal, Mr. Yu is merely attempting to retry his case to the state. As the court is clearly aware, a finding of intentional discrimination is a finding of fact, argued for clear error following a bench trial. Such findings can't be overturned unless they're illogical, improbable, or without support or inferences from the record. As the panel has referenced, the court made a pretty in-depth finding in its ruling on this matter. In fact, made and numbered 188 findings of fact. And based on the briefing and argument to date, Mr. Yu has not identified a specific single finding of fact or articulated why it's illogical, implausible, or without support. He is essentially presenting his original argument and asking his panel to weigh it differently from the trial court. This trial court has had the opportunity to review the credibility of the witnesses, assess their demeanor, their tone, their body language. And in doing so, the court issued a ruling in which he was 87 pages. And in that ruling, he discussed the credibility of each of the witnesses, particularly plaintiff's experts, and essentially found that Mr. Yu's dismissal was not motivated by race or his national origin. And his findings are clearly supported by the record. Do you agree with the basic legal point of your friend's argument that what the statute requires, or what the statute prohibits is excluding from participation on the ground of race? And it doesn't necessarily have to be intentional. So if there is a decision based on race, but it's unconsciously based on race, that would still violate the statute. Do you agree with that? I do not, Your Honor. I think there's elements of that, yes, that you can bring into the argument. But as a statement of itself, I don't think that's a great statement. And to clarify a few other issues on this appeal, I'd like to address that, if I may, because both Mr. Yu and the three amicus briefs spent a great deal of time arguing the theory of implicit bias can be probative of intentional discrimination. And, you know, frankly, the district court agreed with that premise. So I think that argument really has no traction. The court allowed Professor Zorich, Dr. Zorich, to testify on implicit bias and adverse racism and made specifically 33 findings of fact based on her testimony. And that's about 20% of his entire trial decision. He spent on Dr. Zorich, 18 pages to be exact. He didn't dismiss the theory of implicit bias. He dismissed the credibility of Dr. Zorich. He went into great detail of how, you know, the nature of this testimony was weak. And that essentially, in contradiction to the theories that she was talking about, as she applied her theories to the facts of the case, they just weren't supported by the record. As I said, he went to great lengths and great pains to say that the testimony from Dr. Zorich just didn't meet the burden that it needed to meet to show that there, through either implicit bias or adverse racism, that there was an intentional act under Title VII that Idaho State University engaged in. And contrary to Mr. Yu's assertion, the court is not mandated to credit testimony just because it comes from an expert witness. The court's allowed and the court does assess the credibility of every witness, whether it's an expert or otherwise. And staying with that theme, to clarify a few issues as to the other experts that testified, or at least Dr. Kutcher, in regard to the American Psychology Association rules, Dr. Kutcher's testimony clearly demonstrated that there was no nexus. The court showed that while he felt Dr. Kutcher was credible, there wasn't any testimony that was really relevant, drew upon the issue as to whether ISU discriminated against Mr. Yu on the basis of race or origin. He specifically said, if I can read, he opined that Dr. Kutcher opined that ISU had penetrated ethical lapses and due process violation in Yu's case, but nothing he said persuasively suggested that such an alleged lapse or violation were motivated by Yu's race or origin or that they were intentional. So again, we're looking at individuals who testified on Mr. Yu's behalf, felt that there was something amiss with what ISU did or didn't do, but according to the court and according to the fact that the court looked these witnesses in the eye, assessed their credibility, assessed their tone and body language, felt that they were not credible on the issue as to whether there was any intentional discrimination under the sole Title VI claim that was at issue on this case. Just finally, the court is aware that ISU did not take Mr. Yu's dismissal lightly. There were two credible external practicing clinical psychologists who alerted the university that Mr. Yu's failure to see his own limitation was putting him at risk to patients, to harming patients. ISU was not simply inferring a license to sell insurance or to sell real estate. Had it allowed Mr. Yu another chance to complete this year-long internship, it would have put him on a path to being a licensed clinical psychologist and his failure to recognize his own limitations could have been harmful repercussions for a lot of people. ISU just determined that he was not clinically competent. And as an aside, ISU, just like every other university, expects its students to succeed. There's no reason they would admit them, spend the money, time, energy to hone their skills over four or five years if they didn't expect them to succeed. So in closing, the court found with volumes of support in the record that Mr. Yu's dismissal was not a result of intentional discrimination based on his race, but that he was dismissed because he was not qualified to continue his education. As such, I would ask this panel to respectfully affirm that this report is sincere. I do have time left, but I will yield it back if there's no question. Okay, thank you, counsel. Thank you. Do we have a rebuttal argument? Counsel, I think you're muted. Can you hear me now? Yes. All right. Well, if it pleases the court, and on behalf of Mr. Yu, I do appreciate the extra time. I do believe that counsel has basically just restated the court's argument. Basically, there was no mistake.  I looked at everything, et cetera. The problem is that in this particular case, the court just ignored certain things. One of them was the pretext aspect of it, too. Now, we talked about Dr. Kutcher, and we talked about other aspects of it, but if you don't follow your own guidance, if you don't follow your own guidance, that is, by law, according to some of these cases that we cite in our brief, pretext. And one of the things that Mr. Yu— It's evidence of pretext, surely, but it's not conclusive on the question, is it? Well, it is if you don't follow—well, if you have more than one thing, that's true, Your Honor. So we have pretext in regards to the evidence that was presented by Dr. Zerwick in regards to the post hoc rationalizations that were there. We also have evidence that Idaho State University didn't follow their own policies in regards to remediation, okay, in regards to giving notice. But one of the things that sticks out in this particular case is that Mr. Yu was never given any notice that he was in danger of being dismissed. Mr. Yu was never given any remediation. And that's the problem because their policy states that they will. As a matter of fact, when Mr. Yu was terminated from the CCCA, the CTC says they reserve the right to construct a formal plan of remediation. And they say this, to address challenges that may make a student currently unready for internship training. In such instances, a formal plan of remediation will be constructed by the clinical training committee. All right, and one of those things has to tell them the consequences if they don't meet the remediation. So we look at it from an aspect of, is there substantial evidence to show that there was pretext based on what they did? Yes, there is, because one, they didn't follow their own instructions. Two, they made rationalizations based on post hoc reasons. Nobody had decided to dismiss Mr. Yu until he was dismissed from the CCCA. And they came up with things. When you look at our brief, I'd like you to pay close attention to that because we set out, this is what happened and why it happened. No one gave Mr. Yu any notice. Judge Gould, if I could interject. You're more than a minute past your already extended time. So I'm not going to cut you off in mid-sentence like former Chief Justice Rehnquist would do. Can I just finish the sentence, Your Honor? You have to close your argument. I will close my argument by saying that if you don't follow your own procedures, if you don't give a person notice, if you don't give them an opportunity to remediate, then you have basically gone against your own policy, which is pretext. And the two cases of the Supreme Court cases basically say that, look, you've got to at least give the guy notice. You've got to at least give him notice of what happens if he doesn't do right. And that didn't happen in this case. And thank you for the extra time, Your Honor. Yeah, you're welcome. I want to thank both counsel for their spirited arguments. And the panel benefits greatly from your advocacy. So without further ado, that case of you versus Idaho State University shall now be submitted.
judges: Gould, Clifton, Miller